# United States Court of Appeals
## For the First Circuit

No. 19-1445

UNITED STATES OF AMERICA,

Appellee,

v.

FRANKIE DEJESÚS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

John W. VanLonkhuyzen and Verrill Dana LLP on brief for appellant.
Halsey B. Frank, United States Attorney, and Benjamin M. Block, Assistant United States Attorney, on brief for appellee.

July 9, 2021

**SELYA**, **Circuit Judge**.  In this sentencing appeal, defendant-appellant Frankie deJesús challenges both the district court's refusal to grant him an offense-level reduction for acceptance of responsibility, see USSG §3E1.1, and the substantive reasonableness of his downwardly variant sentence.  Concluding, as we do, that his claims of error are fruitless, we affirm.

## I. BACKGROUND

Because the defendant's sentence followed a guilty plea, we draw the facts from the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcripts of the pre-sentencing conference and disposition hearings.  See United States v. Rivera-González, 776 F.3d 45, 47 (1st Cir. 2015); United States v. Del Valle-Rodríguez, 761 F.3d 171, 173 (1st Cir. 2014).

Beginning in 2015, the defendant became involved in a conspiracy to distribute controlled substances.  The nerve center of the conspiracy was in Rochester, New York.  A network of associates transported weekly shipments of heroin and crack cocaine from out of state to a dozen or more distribution locations, known as "trap houses," in central Maine.  Members of the conspiracy traveled back and forth between the drug ring's New York headquarters and these trap houses in order to supply and sell the drugs and collect the proceeds.  This arrangement facilitated a heavy flow of drugs:  from May 27 to June 26, 2016, the defendant himself moved a converted drug weight of 1,874.11

- 2 -

kilograms of heroin and crack cocaine. In the same time frame, the defendant possessed a firearm to help him carry out the conspiracy's business.

After participating in a shootout at a Walmart parking lot in Augusta, Maine, the defendant came to the attention of the authorities. He was arrested on state charges on June 26, 2016. His cell phone was seized, and a forensic search turned up text messages indicative of drug trafficking.

Incident to this arrest, the defendant was charged with reckless conduct with a dangerous weapon, see Me. Rev. Stat. Ann. tit. 17-A, § 211; id. § 1252(4) (repealed 2019); attempted murder, see id. §§ 152, 201; and aggravated assault, see id. § 208. He subsequently pleaded guilty to reckless conduct with a dangerous weapon and disposition was deferred. The other charges were dropped.

That was not the end of the matter. As a result of the leads generated from the defendant's cell phone, a federal grand jury sitting in the District of Maine returned an indictment against him. The indictment charged him with a single count of conspiracy to distribute and to possess with intent to distribute controlled substances. See 21 U.S.C. §§ 841(a)(1), 846. He pleaded not guilty and was released pending trial.

While on pretrial release, the defendant worked for a number of different employers, including Speedway (a convenience-

store chain). In the meantime, the district court set a change-of-plea hearing for October 24, 2018.

Just one day before the scheduled hearing, the defendant was arrested and charged with fourth-degree grand larceny for stealing from Speedway. See N.Y. Penal Law § 155.30. It turned out that, less than one week after starting at the convenience store, he loaded $1,500 onto a prepaid debit card and left the store without paying for the transfer. After committing this theft, he never returned to work at Speedway. Although the defendant now says that the entire affair was the result of a misunderstanding, he pleaded guilty to a lesser charge of petit larceny, see id. § 155.25, and was sentenced to time served.

On November 20, 2018, the defendant belatedly pleaded guilty to the pending federal charge. At the district court's direction, the probation office prepared a PSI Report. The PSI Report recommended a total offense level (TOL) of 34 and a criminal history category (CHC) of I, yielding a guideline sentencing range (GSR) of 151-188 months. In calculating the TOL, the probation office declined to recommend an offense-level reduction for acceptance of responsibility, see USSG §3E1.1, on the ground that the defendant's larceny offense evinced a failure to withdraw from criminal conduct during pretrial release. Even so, the PSI Report limned factors that might provide a basis for a downward variance,

including the defendant's youth, his childhood traumas, and his lack of any prior criminal history.

At the disposition hearing, the district court adopted the probation office's recommended guideline calculations (including the recommendation that the defendant not receive an offense-level reduction for acceptance of responsibility). After weighing the relevant sentencing factors, see 18 U.S.C. § 3553(a), the court imposed a downwardly variant 130-month term of immurement. This timely appeal followed.

## II. ANALYSIS

In fashioning a sentence, a district court must first "use the Sentencing Guidelines to calculate a recommended sentencing range" and then consider "whether a guideline sentence is appropriate in light of the factors enumerated in 18 U.S.C. § 3553(a)." United States v. Vázquez, 724 F.3d 15, 28-29 (1st Cir. 2013). We review imposed sentences through the deferential prism of the abuse of discretion standard. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). "The touchstone of abuse of discretion review in federal sentencing is reasonableness." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011).

The task of evaluating a sentence typically involves a two-step pavane. See United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019); United States v. Clogston, 662 F.3d 588, 590

- 5 -

(1st Cir. 2011). In executing this pavane, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." Clogston, 662 F.3d at 590. Here, the defendant challenges both the procedural integrity and the substantive reasonableness of his sentence. Apart from his challenge to the court's declination to make a downward adjustment for acceptance of responsibility, he finds no fault with the district court's guideline calculations.

The defendant's twin challenges occur at separate steps in the sentencing pavane. Thus, we address them separately.

## A. The Claim of Procedural Error.

The defendant's procedural challenge centers on the district court's decision to deny him an offense-level reduction for acceptance of responsibility. This challenge has two facets.

To begin, the defendant asserts that the district court failed to make an individualized assessment of his circumstances when evaluating his acceptance of responsibility. Instead, it denied him the offense-level reduction based on a general policy and, thus, committed error. See United States v. Flores-Machicote, 706 F.3d 16, 24 (1st Cir. 2013) (requiring district courts to "ground sentencing determinations in case-specific factors"). As evidence of this purported error, the defendant points to a statement made by the court during the disposition hearing. At that time, the judge stated: "[i]n general, it has been my policy

that if a defendant commits a new criminal offense while on pretrial release, I have tended to deny . . . acceptance of responsibility."

The words of a sentencing court must, of course, be taken in context.  See United States v. Rodríguez-Cruz, 997 F.3d 362, 366 (1st Cir. 2021) ("A party cannot lift a single comment from the sentencing dialogue and focus on it in splendid isolation."). Here — when the challenged statement is viewed in its full context — the defendant's assertion withers.  The statement, read as a whole, described a tendency, not a rigid policy.  And perhaps more importantly, the court went on to make clear that its application of its approach "depend[ed] on the nature of the new criminal activity," thereby putting to rest any impression that the defendant was being sentenced based on a general policy.

Last — but surely not least — the court couched the denial of the acceptance-of-responsibility reduction not only on the defendant's commission of a new offense while on pretrial release but also more specifically on facts unique to the defendant's new offense.  These idiosyncratic facts included the method of perpetration of the theft, its timing, and the defendant's relationship with his victim.  This focus on the particular circumstances surrounding the aggravating offense "unmistakably shows that the judge gave individualized attention

to the defendant's situation." <u>Flores-Machicote</u>, 706 F.3d at 22; <u>see United States</u> v. <u>Deppe</u>, 509 F.3d 54, 61 (1st Cir. 2007).

The second facet of the defendant's claim of procedural error is no more robust. The defendant challenges the acceptance-of-responsibility denial frontally, asserting that the district court overemphasized the seriousness of the theft and downplayed the significance of his guilty plea to the offense of conviction. Thus, the defendant submits, the court contradicted a core principle of the guidelines: that a timely and truthful admission of guilt be given great weight in assessing acceptance of responsibility. <u>See</u> USSG §3E1.1 cmt. n.1.

There is less to this argument than meets the eye. We acknowledge, of course, that the guidelines are advisory, <u>see United States</u> v. <u>Booker</u>, 543 U.S. 220, 259-60 (2005), and the Sentencing Commission's commentary is not binding, <u>see United States</u> v. <u>Chuong Van Duong</u>, 665 F.3d 364, 368 (1st Cir. 2012). Even so, the baseline rule is that, in calculating a defendant's GSR, "[c]ourts ordinarily should interpret and apply the guidelines as written," looking both to the "guideline provision about which the defendant complains" and "its associated commentary." <u>United States</u> v. <u>Fiume</u>, 708 F.3d 59, 62 (1st Cir. 2013). The weighing of guideline factors is left principally to the district court's judgment and its factfinding will not be disturbed unless shown to be clearly erroneous. <u>See United States</u>

v. Franky-Ortiz, 230 F.3d 405, 408 (1st Cir. 2000); United States v. Royer, 895 F.2d 28, 29-30 (1st Cir. 1990). What is more, the court is not obliged to spell out its reasoning in exquisite detail: a "plausible basis for arriving at [a particular] conclusion" is sufficient. Royer, 895 F.2d at 30.

There was no clear error here. The defendant bore the burden of proving his entitlement to an offense-level reduction for acceptance of responsibility. See United States v. D'Angelo, 802 F.3d 205, 210 (1st Cir. 2015). Although the guidelines look with favor upon a timely guilty plea as a plinth for an acceptance-of-responsibility adjustment, see USSG §3E1.1 cmt. n.3, a guilty plea alone — even a timely guilty plea — does not guarantee receipt of the downward adjustment, see D'Angelo, 802 F.3d at 210; Royer, 895 F.2d at 29-30. And a sentencing court, when attempting to determine the sincerity of a defendant's acceptance of responsibility, can weigh in the balance any new criminal conduct committed while the defendant was on pretrial release for the offense of conviction. See USSG §3E1.1 cmt. n.1(B); see also D'Angelo, 802 F.3d at 211; United States v. Jordan, 549 F.3d 57, 61 (1st Cir. 2008). Such new criminal conduct has an obvious bearing on the sincerity of a defendant's professed acceptance of responsibility.

In the case at hand, the district court furnished a convincing explanation as to why it deemed the defendant's new

crime antithetic to an offense-level reduction for acceptance of responsibility. The court gave four reasons. First, the amount of money that the defendant stole ($1,500) was substantial. Second, the fact that the theft was from the defendant's employer betokened a "breach of trust" that signified a "lack of remorse." Third, the theft occurred less than a week after the defendant had commenced his employment. Fourth, the theft's logistics indicated a "deliberate, planned crime that required forethought."

These reasons are persuasive, especially since the defendant attempted to counter them solely through his own testimony.[1] Because the district court was "not bound to credit self-serving protestations," United States v. Jiminez, 498 F.3d 82, 86 (1st Cir. 2007), its determination that the defendant had deliberately engaged in significant criminal conduct while on pretrial release cannot be said to be clearly erroneous. And once the district court supportably has found that the defendant has committed a new offense after being charged, it "may . . . decline to award a reduction for acceptance of responsibility on that ground alone." United States v. Carrington, 96 F.3d 1, 9 (1st Cir. 1996).

_____

[1] When the district court (during a pre-sentencing conference) noted the lack of extrinsic evidence favoring the defendant on this point and offered defense counsel an opportunity to supplement the record, counsel declined. He told the court that he "[did not] believe that approach [was] worth the coin."

### B. **The Claim of Substantive Unreasonableness**.

This leaves the defendant's claim that his sentence is substantively unreasonable. We treat that claim as preserved, see Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020), and review it for abuse of discretion, see Gall, 552 U.S. at 51; Martin, 520 F.3d at 92. To apply this standard, we must consider the totality of the circumstances. Martin, 520 F.3d at 92.

Our starting point is the sentence itself: a 130-month term of immurement. That sentence was a full twenty-one months beneath the bottom of the GSR. Notwithstanding this sharp downward variance, the defendant argues that — all things considered — any sentence exceeding 120 months should be regarded as substantively unreasonable.[2]

This argument cannot withstand scrutiny. "Our case law makes pellucid that the hallmarks of a substantively reasonable sentence are a plausible sentencing rationale and a defensible result." Rodríguez-Cruz, 997 F.3d at 366. Both hallmarks are present here.

---

[2] The reasoning behind this 120-month figure is not immediately apparent. Arguably, it may represent an attempt either to borrow the sentence imposed on another member of the conspiracy or to recast the GSR to reflect what it would have been had the court granted a downward adjustment for acceptance of responsibility.

We begin with the sentencing court's rationale. That rationale must be discernable, but it need not "be precise to the point of pedantry." Del Valle-Rodríguez, 761 F.3d at 177.

In this instance, the court's rationale included its appraisal of the defendant's culpability. It stressed his role in a sprawling conspiracy that trafficked large amounts of highly addictive drugs. The court also thought it significant that the defendant participated in the conspiracy not out of addiction but out of a decision to profit from a "business that trades on misery." So, too, the court attached significance to the defendant's participation in a risky shootout in a Walmart parking lot during broad daylight, endangering innocent bystanders who were close at hand.

The court then extended its rationale to take account of mitigating factors. It noted, for example, the defendant's youth, his traumatic childhood, his guilty plea, and the absence of a prior criminal record. Weighing all of the factors, pro and con, the court concluded that a downwardly variant sentence was appropriate.

We find this rationale plausible. Although the defendant insists that the district court misallocated the weight that it gave to competing factors, the allocation of weight as among sentencing factors is — within wide margins — a matter committed to the district court's informed discretion. See United

States v. Colón-Rodríguez, 696 F.3d 102, 108 (1st Cir. 2012); Clogston, 662 F.3d at 593. The court below did not venture beyond those margins.

The question remains as to whether the length of the sentence is defensible. The defendant urges us to answer this question in the negative, arguing that a 130-month sentence is longer than necessary and, thus, offends the parsimony principle. See 18 U.S.C. § 3553(a); see also Holguin-Hernandez, 140 S. Ct. at 765-66; United States v. Rodríguez, 527 F.3d 221, 228 (1st Cir. 2008). We disagree.

Where a sentence falls within a properly calculated GSR, a defendant who challenges it faces a steep uphill climb to show that the length of the sentence is unreasonable. See Rita v. United States, 551 U.S. 338, 347-48 (2007); United States v. Cortés-Medina, 819 F.3d 566, 572 (1st Cir. 2016). It necessarily follows that the climb is even steeper where, as here, a defendant contests the length of a downwardly variant sentence. See United States v. Millán-Machuca, 991 F.3d 7, 32 (1st Cir. 2021). The defendant cannot scale those heights.

When appellate review focuses on whether the length of a sentence is defensible, significant deference is due to the first-hand judgment of the sentencing court. See Gall, 552 U.S. at 51-52; Martin, 520 F.3d at 92. Because "reasonableness is a protean concept," Martin, 520 F.3d at 92, there is usually not a

single appropriate sentence in any given case but, rather, a "wide universe of reasonable sentences," United States v. Sepúlveda-Hernández, 817 F.3d 30, 34 (1st Cir. 2016).  We conclude, without serious question, that the below-the-range sentence imposed here fits comfortably within this capacious universe.

The defendant resists this conclusion.  He says that there is a disparity between his sentence and the sentences imposed on others who participated in the same drug-trafficking conspiracy.  The defendant, though, asks us to compare incomparables:  apart from the fact that his proposed comparators took part in the same drug-trafficking conspiracy, he makes no effort to show that any of them was similarly situated.  For aught that appears, facts such as the defendant's possession of a firearm, his acceptance-of-responsibility shortfall, and/or his role in the parking-lot shootout strip the proposed comparisons of any probative value.  See Flores-Machicote, 706 F.3d at 24 (explaining that "[c]omparing apples to oranges is not a process calculated to lead to a well-reasoned result" when a defendant alleges sentencing disparity).

That ends this aspect of the matter.  Because the district court articulated a plausible sentencing rationale and reached a thoroughly defensible result, we reject the defendant's claim of substantive unreasonableness.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the defendant's sentence is

**<u>Affirmed</u>**.