# United States Court of Appeals
## For the First Circuit

No. 21-1129

UNITED STATES OF AMERICA,

Appellee,

v.

BARRY MCCARTHY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

Stephen C. Smith and Steve Smith Trial Lawyers on brief for
appellant.
Donald E. Clark, Acting United States Attorney, Julia M. Lipez
and Benjamin Block, Assistant United States Attorneys, on brief
for appellee.

April 12, 2022

**SELYA**, **Circuit Judge**.  This is a rifle-shot appeal.  In it, defendant-appellant Barry McCarthy takes aim at the district court's refusal to grant him a downward adjustment for acceptance of responsibility, see USSG §3E1.1, in constructing his guideline sentencing range (GSR).  Concluding, as we do, that the defendant is firing blanks, we affirm his sentence.

**I**

We start by rehearsing the relevant facts and travel of the case.  Because the defendant's sentence followed a guilty plea, we draw the facts from the presentence investigation report (PSI Report) and the transcript of the disposition hearing.  See United States v. deJesús, 6 F.4th 141, 145 (1st Cir. 2021); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In November of 2018, a consortium of law enforcement agencies commenced an investigation into the trafficking of large quantities of narcotics from New York to Maine.  The investigation uncovered information indicating that persons travelled from New York to Maine to sell and distribute narcotics out of locations called "trap houses" (where the drug traffickers often stayed).  Maine residents who made these trap houses available were compensated with either drugs or cash.  At times, these Maine residents would act as "middlemen," completing hand-to-hand drug transactions with retail customers.

The probe revealed that the defendant (a Maine resident) had allowed two New Yorkers to use his dwelling as a trap house from at least February until May of 2019.  At that time, a search warrant for the dwelling and an arrest warrant for the defendant were issued and executed.  The defendant later confessed that an estimated 100 to 200 grams of cocaine or cocaine base (crack cocaine), along with other drugs, had been brought to his home weekly for distribution.

Incident to his arrest, the defendant was charged with maintaining a drug involved premises.  See 21 U.S.C. § 856(a)(2). After waiving his right to a preliminary examination, the defendant was detained at the Somerset County Jail.  While detained, he engaged in misconduct involving prison contraband.  In September of 2019, he was charged with trafficking tobacco in an adult correctional facility in violation of Maine law.  See Me. Rev. Stat. Ann. tit. 17-a, § 757-A.  He later pleaded guilty to that charge.

In November of 2019 — a few months after he was charged with trafficking contraband in prison — the defendant waived indictment on the federal charge and pleaded guilty to maintaining a drug involved premises.  At the district court's direction, the probation office prepared a PSI Report.  The PSI Report — revised in March of 2020 — recommended a total offense level of 26 and

- 3 -

placed the defendant in criminal history category V. These calculations yielded a GSR of 110 to 137 months.

In setting the total offense level, the probation officer declined to recommend an offense-level reduction for acceptance of responsibility. See USSG §3E1.1. Along with the tobacco trafficking charge, the probation officer concluded that the defendant's admissions established by a preponderance of the evidence other offenses like trafficking in prison contraband generally. See Me. Rev. Stat. Ann. tit. 17-a, § 757. Citing United States v. Jordan, 549 F.3d 57 (1st Cir. 2008), the probation officer determined that the defendant's transgressions while detained evinced a failure to withdraw from criminal conduct and that the defendant had not clearly demonstrated acceptance of responsibility with respect to the offense of conviction.

Sentencing was delayed due to the COVID-19 pandemic. After some time had passed, the defendant agreed to be sentenced in a video-conference proceeding. As a result, the disposition hearing was held remotely in January of 2021. No objections were interposed to the revised PSI Report, and the district court adopted the report in full (except for a single modification reflecting that the defendant had pleaded guilty to the tobacco trafficking charge). The court also accepted the probation officer's suggested guideline calculations, including the recommendation that an offense-level reduction for acceptance of

responsibility should be withheld. The court explained that its ruling on that adjustment rested on the grounds adumbrated in the PSI Report.

The district court then mulled the sentencing factors. See 18 U.S.C. § 3553(a). Among other things, the court considered the defendant's significant criminal history and observed that his "inability or unwillingness to comply with the law . . . ha[d] merely been unabated for the bulk of [his] life." After evaluating the factors limned in 18 U.S.C. § 3553(a), the court imposed an eighty-six-month term of immurement, which reflected a two-level downward variance for the defendant's agreement to be sentenced remotely and a further two-level downward departure requested by the government. The court stated that the defendant did not deserve any further downward adjustment and added that the sentence imposed was "untethered" to the guideline range and would have been the same had any of the objections regarding offense-level adjustments been decided differently. This timely appeal followed.

## II

The defendant challenges his below-guidelines sentence on a single ground: the district court's denial of an offense-level reduction for acceptance of responsibility. We turn directly to that challenge.

The guidelines provide for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," USSG §3E1.1(a), and an additional one-level reduction, on the government's motion, if — among other requirements — the defendant has "timely notif[ied] authorities of his intention to enter a plea of guilty," id. §3E1.1(b). The district court determined that the defendant did not clearly demonstrate acceptance of responsibility for his offense and, thus, denied him any credit for acceptance of responsibility.

Our standard of review is familiar. A "sentencing court's factbound determination that a defendant has not accepted responsibility" is reviewed only for clear error. Jordan, 549 F.3d at 60; see United States v. McLaughlin, 378 F.3d 35, 37 (1st Cir. 2004). We will not reverse unless — after a careful review of all the relevant facts — we are "left with a definite and firm conviction that a mistake has been committed." Brown v. Plata, 563 U.S. 493, 513 (2011) (quotations omitted); see United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990). The sentencing court is steeped in the nuances of the case, and we accord substantial deference to its determination that acceptance of responsibility has not been shown. See USSG §3E1.1, cmt. n.5; see also deJesús, 6 F.4th at 148. Despite this deference, though, questions of law, including questions involving the interpretation of the sentencing

guidelines, engender de novo review.[1]  See Jordan, 549 F.3d at 60;
McLaughlin, 378 F.3d at 38.

The defendant's chief contention is that his timely pre-indictment guilty plea and related facts clearly demonstrated his acceptance of responsibility for the offense of conviction.  Given the weight of that evidence, the defendant suggests, it was clearly erroneous for the district court to find that his rogueries while in prison warranted the denial of an acceptance-of-responsibility adjustment.  Although the defendant insists that his claim of error challenges only the supportability of the district court's factfinding, his arguments implicate questions of law.  Thus, we address those questions before addressing his core claim.

**A**

Notwithstanding the purely advisory status of the sentencing guidelines, "the baseline rule is that, in calculating a defendant's GSR, courts ordinarily should interpret and apply the guidelines as written, looking both to the guideline provision . . . and its associated commentary."  deJesús, 6 F.4th

---

[1] A different standard obtains when a claim of error is raised for the first time on appeal.  See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  The parties quarrel over whether the defendant preserved his challenge to the district court's decision to deny a downward adjustment for acceptance of responsibility. We need not resolve this contretemps but, rather, assume — favorably to the defendant — that he has preserved his challenge.

at 148 (quotations and alteration omitted). The Sentencing Commission has provided a non-exhaustive list of factors that a district court may consider when determining whether a defendant has accepted responsibility for the offense of conviction. See USSG §3E1.1, cmt. n.1. As relevant here, that list suggests that a sentencing court may take into account whether a defendant has "voluntar[ily] terminat[ed] or withdraw[n] from criminal conduct or associations" when deciding whether he has accepted responsibility. Id. cmt. n.1(B); see McLaughlin, 378 F.3d at 38. Such post-offense conduct bears on the "sincerity of a defendant's professed acceptance of responsibility." deJesús, 6 F.4th at 148.

The defendant asserts that his misbehavior while in custody cannot — as a matter of law — outweigh the evidence undergirding his acceptance of responsibility. In support, he advances two reasons: the timing of his misbehavior (which occurred before he waived indictment and entered his guilty plea) and its triviality (a low-level misdemeanor).

The defendant's assertions rest on dual premises. First, he argues that for criminal conduct to have purchase in the acceptance-of-responsibility analysis, it must occur after the entry of a guilty plea. Second, he presumes that minor offenses necessarily bear less weight than serious offenses with respect to the issue of whether a defendant has sincerely accepted responsibility — so much so that low-level misdemeanors (such as

the misdemeanor that he committed) cannot block an acceptance-of-responsibility reduction.  Neither premise withstands scrutiny.

Our precedent squarely forecloses the defendant's argument regarding the timing of his criminal conduct.  We consistently have rejected the view that only post-plea conduct is relevant to assessing a defendant's acceptance of responsibility under section 3E1.1.  See, e.g., Jordan, 549 F.3d at 61; McLaughlin, 378 F.3d at 38; United States v. Carrington, 96 F.3d 1, 9 (1st Cir. 1996).  For instance, we have explained that a "sentencing court may appropriately consider whether [the defendant] has voluntarily ceased all participation in criminal activity," and we have found no reason to exempt conduct occurring before a defendant avows contrition by entering a guilty plea. McLaughlin, 378 F.3d at 38.

We hasten to add, however, that there are boundaries on how far back a sentencing court may reach in determining whether a defendant has accepted responsibility.  To put it bluntly, a sentencing court "cannot go back limitlessly in time in assessing acceptance of responsibility."  Id. at 41.  For this purpose, a sentencing court should not go back further than "the lodging of a federal charge" because that is when a "defendant has been put on notice . . . that federal prosecutors have taken an interest in his conduct."  Id.

Given that guidepost, we find no clear error in the district court's consideration of the defendant's in-prison transgressions. Those transgressions occurred after a formal criminal complaint had been lodged and during the months before his guilty plea in November of 2019. Because the defendant waived his right to prosecution by indictment, he is correct in saying that the conduct identified by the district court took place before an indictment was handed down. But he strategically omits that he was detained on federal charges before his misbehavior occurred, and that detainer surely put him on notice that federal prosecutors were interested in his conduct. We conclude, therefore, that the district court was allowed to consider the defendant's post-arrest conduct in assessing whether he had accepted responsibility for the offense of conviction. The defendant has not shown any error of law in this regard.

The defendant's second premise fares no better. We discern no basis for a categorical rule that post-arrest conduct amounting to no more than a low-level misdemeanor — as opposed to more serious conduct — is necessarily less probative of the authenticity of a defendant's acceptance of responsibility. In point of fact, application note 1(B) makes pellucid that any continued criminal conduct may be relevant for this purpose. That note "extends to all criminal conduct," without any reference either to the severity of the conduct or to its classification as

a felony or a misdemeanor. Jordan, 549 F.3d at 60; see USSG §3E1.1, cmt. n.1(B).

Our case law confirms that criminal conduct, regardless of its classification as a felony or a misdemeanor, may shed light on a defendant's lack of contrition and, therefore, on his acceptance of responsibility. We have, for example, reasoned that post-offense conduct may be highly relevant to whether a defendant sincerely accepted responsibility for his crime if it involves a "high degree of insensitivity to the root causes" of the defendant's original offense. United States v. Saxena, 229 F.3d 1, 10 (1st Cir. 2000); see Jordan, 549 F.3d at 61 (reasoning that decision to drink and drive while on bail "ha[d] even more bite" as predicate for finding lack of authentic remorse because the defendant had "blamed his involvement" in the underlying offense "on an escalating addiction to alcohol and drugs"). Such insensitivity may inhere in misdemeanors as well as in felonies. So, too, we have considered persuasive a district court's explanation that criminal conduct "signified a lack of remorse," because it reflected a "breach of trust," and was "deliberate, planned," and "required forethought." deJesús, 6 F.4th at 148 (quotations omitted).

These characteristics may be present in a kaleidoscopic array of crimes, major or minor. Accordingly, we hold that the weight accorded by a sentencing court to criminal conduct in an

- 11 -

acceptance-of-responsibility analysis is not determined by the classification of the crime but, rather, depends upon the nature and extent of the misconduct. The defendant has not shown any error of law in this regard.

That ends this aspect of the matter. We conclude that a sentencing court may find — in its discretion — that criminal conduct sheds (or does not shed) light on the authenticity of a defendant's acceptance of responsibility regardless of whether that conduct is classified as a felony or as a misdemeanor. Typically, any post-offense criminal conduct may be considered as long as it occurs after a defendant can be said to be on notice that federal prosecutors have demonstrated an interest in his conduct (say, by charging him). And there is no hard-and-fast rule that criminal conduct necessarily bears less on a defendant's claim of remorse if that conduct comprises a low-level misdemeanor rather than a more serious crime.

**B**

This brings us to the defendant's remaining challenge. He posits that the district court, when performing the acceptance-of-responsibility analysis, clearly erred in balancing the relevant factors. In his view, the court must have undervalued the evidence of his acceptance of responsibility, overvalued the evidence of his post-offense conduct, or both.

There was no clear error. It is the defendant's burden to convince the district court that he deserves a downward adjustment for acceptance of responsibility. See deJesús, 6 F.4th at 148; McLaughlin, 378 F.3d at 39. The defendant must carry that burden by a preponderance of the evidence, demonstrating "candor and authentic remorse" beyond "a pat recital of the vocabulary of contrition." Royer, 895 F.2d at 30. Whether a defendant has sincerely accepted responsibility for his crime is a fact-intensive inquiry that involves the balancing of a variety of factors. See USSG §3E1.1, cmt. n.1; United States v. Nuñez-Rodriguez, 92 F.3d 14, 21 (1st Cir. 1996) ("[S]ection 3E1.1 requires the sentencing court to balance many divergent factors, consistent and inconsistent with acceptance of responsibility." (emphasis in original)). How the mix of factors is weighed is uniquely within the discretion of the sentencing court. See deJesús, 6 F.4th at 148 ("The weighing of guideline factors is left principally to the district court's judgment."). After all, that court has seen and heard the defendant at first hand and possesses a superior coign of vantage from which to evaluate whether a defendant has expressed sincere remorse. See USSG §3E1.1, cmt. n.5.

Though "the guidelines look with favor upon a timely guilty plea as a plinth for an acceptance-of-responsibility adjustment," such a plea "does not guarantee receipt of the

downward adjustment." deJesús, 6 F.4th at 148.  Among other things, a sentencing court "can weigh in the balance any new criminal conduct committed" by the defendant after his arrest. Id.  Similarly, the court may consider whether and to what extent a defendant's cooperation with the government weighs in favor of finding that the defendant clearly demonstrated his acceptance of responsibility — but such cooperation does not guarantee that the defendant will receive the downward adjustment.  See Nuñez-Rodriguez, 92 F.3d at 20 (observing that defendant's voluntary identification of criminal associates will not always be "reliable" indication of remorse).  In the last analysis, the weighing of all the pertinent factors is "a quintessential judgment call."  Jordan, 549 F.3d at 62.  Given the "great deference" due to the sentencing court in determining the defendant's acceptance of responsibility, USSG §3E1.1, cmt. n.5, we cannot say, on the record before us, that the determination of the court below was clearly erroneous.

To begin, the district court furnished an adequate basis for its determination.  The court adopted the PSI Report in its entirety, including that report's explanation for denying the acceptance-of-responsibility adjustment.  In relevant part, the report detailed the defendant's misconduct at the correctional facility.  It described how the defendant possessed contraband while detained, how he attempted to share that contraband with

- 14 -

another inmate, and how he lied when confronted with the evidence of his malefactions. And the report noted that, based on this misconduct, the defendant had been charged with a misdemeanor for trafficking tobacco in an adult correctional facility.

The PSI Report also concluded that the defendant's admissions supported a finding that he had committed other misdemeanors as well. Citing Jordan, the report recommended that the court find that the defendant had not clearly demonstrated his acceptance of responsibility, given his criminal conduct while in prison.[2] We think that this factual basis for the denial of the adjustment was adequate. See deJesús, 6 F.4th at 148-49.

We add, moreover, that the district court's refusal to grant an acceptance-of-responsibility reduction is consistent with our precedent. We have, for example, upheld the denial of an acceptance-of-responsibility adjustment based on attempts to smuggle drugs into a prison, see United States v. Lagasse, 87 F.3d 18, 25 (1st Cir. 1996); see also United States v. Stebbins, 523 F. App'x 1, 4-5 (1st Cir. 2013), and the use of marijuana in violation

---

[2] The defendant argues that the PSI Report's reliance on Jordan is misplaced, complaining that the post-offense conduct in Jordan was much more severe than his misconduct. Moreover, the defendant in Jordan did not save the government additional expense by waiving indictment. But this plaint sets up a straw man: the PSI Report refers to Jordan only to underpin the general proposition that a district court may consider post-offense criminal conduct in assessing a defendant's acceptance of responsibility. See Jordan, 549 F.3d at 61.

- 15 -

of bail conditions, see United States v. O'Neil, 936 F.2d 599, 599-601 (1st Cir. 1991).  In each of these cases — even though the conduct may not have "compel[led] the denial of credit for acceptance of responsibility" — a court could reasonably conclude that the conduct was "inconsistent with [the defendant's] claimed remorse."  Lagasse, 87 F.3d at 25.  So it is here:  the district court supportably found that the defendant had not ceased all criminal activity, which bespoke an insincere acceptance of responsibility despite his guilty plea and other laudable conduct.  See deJesús, 6 F.4th at 148-49; Jordan, 549 F.3d at 61 ("Criminal conduct, whatever its nature, is a powerful indicium of a lack of contrition.").

If more were needed — and we doubt that it is — the defendant's post-offense conduct, as described in the PSI Report, was particularly revealing on the issue of insincerity.  Not only did the conduct involve dissembling when confronted with evidence of wrongdoing, but it also followed a lengthy criminal past.  That criminal history, in the court's estimation, bore witness to the defendant's unwillingness or inability to comply with the law.  Viewed through this prism, the district court could reasonably conclude — as it did — that the post-offense conduct showed that the defendant's willingness to plead guilty was not motivated by remorse or contrition.

The defendant resists this conclusion. He predicts that if the district court's ruling is affirmed, we will have sanctioned a per se rule that any post-arrest criminal conduct forecloses an offense-level reduction for acceptance of responsibility. This is evident, he says, because "it is hard to comprehend under what factual scenario a defendant would be entitled to a reduction for acceptance of responsibility if he committed any crime after being charged." Such a per se rule would, he warns, undermine the purpose of section 3E1.1 and discourage individuals from pleading guilty.

We think this warning overblown. The district court's determination does not mean that post-offense criminal conduct necessarily precludes an acceptance-of-responsibility adjustment in every case. The court's decision reflects only that in the defendant's case, his particular transgressions in prison outweighed his claim (which the court apparently found insincere) that he had clearly demonstrated his acceptance of responsibility for the offense of conviction. The court did not indicate that it was announcing a per se rule, and we specifically hold that no such rule obtains.

We need go no further. We hold that the district court's decision to deny the acceptance-of-responsibility adjustment was

not clearly erroneous.[3]   See Jordan, 549 F.3d at 62; see also Carrington, 96 F.3d at 9-10.   Consequently, that decision must stand.

## III

For the reasons elucidated above, the challenged sentence is

**Affirmed**.

---

[3] The government argues that even if the district court clearly erred, any such error would be harmless given that the sentencing court made clear that it would have imposed the same sentence, "untethered" to the guidelines, and without regard to its ruling on acceptance of responsibility.  Because we find that the district court did not clearly err, we need not address this argument.