Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-2232

UNITED STATES,

Appellee,

v.

DOUGLAS STEBBINS, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Matthew S. Erickson for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty, United States Attorney, was on brief for appellee.

May 1, 2013

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.**  On his plea of guilty to one count of possession of a firearm by a convicted felon, the district court sentenced appellant, Douglas Stebbins, Jr., to 120 months of imprisonment.  We affirm the sentence.

I

During his plea colloquy, Stebbins gave only a limited account of the conduct that led to his conviction.  He agreed that on January 28, 2008, police officers stopped his car in Holden, Massachusetts, and that when they searched it, they found a backpack with two firearms inside, a Walther .22 caliber pistol and a Smith and Wesson .40 caliber pistol.  The Walther had been bought by William Wheeler, who had also procured eight additional guns for Stebbins, for each of which Stebbins had supplied the cash and paid Wheeler a fee of $80 to $100.  Stebbins also agreed that he had been convicted in 2005 of unlawful drug trafficking.

Stebbins's presentence report (PSR) indicated that he had been at Wheeler's side in purchasing six other firearms in addition to the ones he acknowledged in the colloquy.  The report thus held Stebbins accountable for sixteen weapons: the nine he admitted getting with Wheeler, the six others, and the Smith and Wesson pistol in Stebbins's backpack.  The report summarized wiretap evidence that Stebbins was a long-time supplier of firearms to drug dealers.

In the PSR, the probation officer recommended a base offense level of 20, see U.S.S.G. § 2K2.1(a)(4)(A) (2010), a four-level increase because the crime involved at least ten firearms, id. § 2K2.1(b)(1)(B), another four-level increase because Stebbins engaged in the trafficking of firearms, id. § 2K2.1(b)(5), and a further four-level increase because Stebbins transferred the firearms with reason to believe that they would be used in connection with another felony, id. § 2K2.1(b)(6)(B). The report also recommended a three-level reduction for acceptance of responsibility under § 3E1.1. Based on the recommended offense level of 29 and the Criminal History Category of IV, the PSR calculated an advisory guidelines range of 121-to-151 months of imprisonment. The statutory maximum sentence was 120 months.

Stebbins's sole objection to the PSR went to the trafficking enhancement under § 2K2.1(b)(5), which requires the defendant to have had reason to believe that the recipient of a firearm intended to use it unlawfully. When Stebbins denied any such knowledge, the Government offered evidence supporting pending drug and firearm charges in Massachusetts, arising out of the conduct charged here, to show that he knew perfectly well how the firearms would be used. In denying a motion to suppress in that case, the Massachusetts Superior Court had found that Stebbins had negotiated the exchange of firearms for cocaine or marijuana from two individuals, Polydores and Kapulka, who were involved in other

instances of drug trafficking.  See Govt's Addendum 29-31.  At sentencing, the district court admitted into evidence the Massachusetts suppression decision, six indictments naming Stebbins, Polydores, and Kapulka in drug and firearms conspiracies, as well as other corroborative evidence.  A federal agent also testified that Wheeler had confessed to accepting money from Stebbins to act as a straw purchaser.  Finally, in support of a new argument that the acceptance-of-responsibility reduction should no longer apply, the government offered a Maine complaint against Stebbins for post-arrest conduct of trafficking in prison contraband, stemming from his attempts to smuggle drugs into prison on the persons of his 6-year-old daughter and his girlfriend.

The district court applied the § 2K2.1(b)(5) enhancement, finding that Stebbins knew or had reason to believe that Polydores or Kapulka intended to use the firearms illegally.  The court also agreed with the Government's argument that the § 3E1.1 reduction for acceptance of responsibility should not apply because it was "beyond argument" that Stebbins had failed to withdraw from criminal conduct.  J.A. 82.  With an offense-level of 32 and a Criminal History Category of IV, Stebbins's advisory sentencing range was 168-to-210 months.

Considering the 18 U.S.C. § 3553 factors, the court explained that only three of the guns attributable to Stebbins had been recovered, leaving society at serious risk from the thirteen.

-4-

Although Stebbins had a tough youth, the court found it "disturbing" that he continued to engage in crime, even while awaiting sentencing. J.A. 83. The court imposed a 120-month sentence.

II

Stebbins raises four challenges to his sentence.

A

He first contends that the district court should have reduced his sentence under U.S.S.G. § 5G1.3(b) to account for his incarceration for 30 months on the related state drug and firearm charges prior to sentencing in this case. But we find no mention of any such request in the district court record, and since Stebbins does not argue here that he adequately preserved the claim, see Reply Br. 1-3, our review is only for plain error, see United States v. Olano, 507 U.S. 725, 732 (1993). To prove plain error, Stebbins bears the burden of showing an error that was plain, Johnson v. United States, 520 U.S. 461, 467 (1997), and we need not get to the point of subtlety to see that there was nothing plain, even if we were to assume Stebbins is correct in claiming an error in failing to apply § 5G1.3(b). It provides that if

> a term of imprisonment resulted from another offense that is relevant conduct to the instant offense . . . and that was the basis for an increase in the offense level for the instant offense . . . the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such

> period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

U.S.S.G. § 5G1.3(b). Stebbins does not contest the Government's position that "§5G1.3 applies only when the defendant being sentenced on federal charges is already serving a sentence imposed by another court." Reply Br. 1 (quoting Appellee's Br. 31). And at the time of his sentencing in this case, Stebbins was merely detained on pending state charges in Massachusetts; he was not serving an undischarged "term of imprisonment." Given the text of the Guideline, it could not have been plainly erroneous for the district court to refuse credit against his federal sentence for Stebbins's time served in pretrial detention in Massachusetts. At least one court of appeals had reached the same conclusion as the district court did here. See United States v. Rollins, 552 F.3d 739, 742 (8th Cir. 2009) (holding that § 5G1.3(b) "does not apply" where the "district court sentenced [the defendant] before the state court sentenced him").

Thus understood, the guideline speaks in harmony with the provision of 18 U.S.C. § 3585(b), that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." While "§ 3585(b) does not authorize a district court to compute the credit at sentencing," United States v. Wilson, 503 U.S. 329, 334 (1992), the Bureau of Prisons has authority to

-6-

provide it as an administrative remedy, see 28 C.F.R. § 542.10, .11(a), subject to ultimate judicial review by habeas petition under 28 U.S.C. § 2241, Rogers v. United States, 180 F.3d 349, 358 (1st Cir. 1999). We, of course, express no opinion on the question of ultimate entitlement to administrative relief.

B

Stebbins next contests the district court's denial of an offense-level reduction for acceptance of responsibility under § 3E1.1, which provides for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense" and an additional reduction of one level on the government's motion if the defendant has "timely notif[ied] authorities of his intention to enter a plea of guilty." The "clear-error standard [governs review of] . . . a sentencing court's factbound determination that a defendant has not accepted responsibility," United States v. Jordan, 549 F.3d 57, 60 (1st Cir. 2008), and we will reverse only if we are "left with a definite and firm conviction that a mistake has been committed," Brown v. Plata, 131 S. Ct 1910, 1930 (2011) (internal quotation marks and citation omitted).

Stebbins's central contention is that the district court erred in "weigh[ing] only Mr. Stebbins'[s] new State charges in denying a reduction" and in failing to give proper weight to his timely guilty plea, Appellant's Br. 13, but the record belies the

claim.  The district court noted that the PSR recommended the reduction because Stebbins pleaded guilty and admitted that he "screwed up," J.A. 80, and then explained how the evidence of the drug-trafficking crime that Stebbins allegedly committed in prison after the preparation of the PSR militated against the favorable treatment:

> The defendant is here because he was engaged in a conspiracy to illegally possess firearms to trade them for drugs, and his possession of firearms to begin with was illegal.  If he is still trafficking in drugs while in prison or attempting to traffic in drugs while in prison while awaiting sentence for a crime . . . the context of which is trafficking in drugs, it is apparent and I think beyond argument that he has not yet gotten the message about the need to stop dealing in drugs and engaging in criminal activity generally.

J.A. 82.

Far from being clearly erroneous, the decision was perfectly consistent with our cases.  As then-Chief Judge Breyer wrote, a district court "could reasonably conclude that the [defendant's] later conduct (such as his use of marijuana in violation of bail conditions explicitly forbidding drug use) showed that [he] lacked 'authentic remorse.'"  United States v. O'Neil, 936 F.2d 599, 601 (1st Cir. 1991).  Likewise, in Jordan, we explained that "[c]riminal conduct, whatever its nature, is a powerful indicium of a lack of contrition."  549 F.3d at 61.  The reduction was properly denied.

C

Stebbins's third argument is that the district court wrongly imposed the four-level enhancement authorized by U.S.S.G. § 2K2.1(b)(5), "[i]f the defendant engaged in the trafficking of firearms." Application Note 13 to that provision states that "Subsection (b)(5) applies . . . if the defendant . . . transferred . . . firearms to another individual . . . and . . . had reason to believe that such conduct would result in the . . . transfer . . . of a firearm to an individual . . . who intended to use or dispose of the firearm unlawfully."

We have said before that a court need not find "specific knowledge of any specific felonious plans" for the provision to apply and that the enquiry into a defendant's belief may rest on "plausible inferences" from "circumstantial evidence." United States v. Marceau, 554 F.3d 24, 32 (1st Cir. 2009). Here, the district court found the enhancement in order because "the defendant knew or had reason to believe that Mr. Polydores and/or Mr. Kapulka intended to dispose of the firearms illegally." J.A. 70. That finding stands unless Stebbins can show it was clear error. See Marceau, 554 F.3d at 29.

The district court cited five reasons to conclude as it did. See J.A. 70-73. First, the type of guns intended to be transferred were easily concealed handguns, which are tools of the drug trade. Second, Stebbins came into possession of them

-9-

illegally through a straw buyer. Third, the two firearms Stebbins possessed were the latest in a series of guns illegally purchased by Wheeler as a straw man. Fourth, as shown by the findings of the Massachusetts trial judge, Stebbins was involved in a conspiracy to obtain guns in Maine and to exchange them for drugs in Massachusetts. Fifth, one of the firearms Stebbins had previously sold to Polydores was in turn sold by him to a confidential informant with its serial number removed, and Stebbins was arrested with a grinder in his car. The court found that Stebbins "had the grinder in his motor vehicle to allow him to grind off the serial numbers of the two firearms to avoid tracing to the Wheeler purchase . . . and to the unraveling of the entire conspiracy." J.A. 73.

Applying the enhancement was not clear error: by no means are we "left with a definite and firm conviction" that the district court was mistaken in finding that Stebbins had reason to believe that Polydores or Kapulka would use the firearms illegally. Brown, 131 S. Ct at 1930 (internal quotation marks and citation omitted). Indeed, the district court's fourth or fifth reason alone would have been sufficient, for the court explained, "the defendant was planning to give these firearms to people he knew were drug dealers," which is "evidence that he knew or had reason to believe that these recipients would improperly dispose of them." J.A. 71.

D

Finally, Stebbins argues that his sentence was substantively unreasonable overall, a claim we review for abuse of discretion. See United States v. Tavares, 705 F.3d 4, 24 (1st Cir. 2013). "A sentence is not substantively unreasonable merely because the reviewing court would have sentenced the defendant differently." United States v. Flores-Machicote, 706 F.3d 16, 25 (1st Cir. 2013). Rather, "the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

Here, Stebbins's advisory guidelines range was 168-to-210 months' imprisonment, and he received a 120-month sentence. To be sure, his sentence fell below the guidelines range of necessity, as Congress capped sentences for violating 18 U.S.C. § 922(g)(1) at 120 months. See 18 U.S.C. § 924(a)(2). But that constraint does not tell a district court to ignore the Sentencing Commission's judgment in setting sentencing ranges that reflect the severity of criminal conduct. On the contrary, in deciding on a sentence, a district court must take the applicable range into account, as well as the considerations set out in 18 U.S.C. § 3553(a).

The district court reasonably did so here. The court flagged Stebbins's pernicious conduct in enlisting Wheeler, a drug addict, to act as a straw in buying fifteen guns (all but three of which were apparently circulating) for Stebbins to possess

-11-

unlawfully.  Since Stebbins disavowed any drug addiction of his own, the implication was that his acquisition of the firearms was driven by profit to be had from selling to violent criminals. Added to all that, the district court noted Stebbins's recent recidivism and lack of contrition.  All told, these facts justified the weighty sentence.  There was no abuse of discretion.

III

The sentence is affirmed.

It is so ordered.