**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4381

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

VICTOR DARNELL BERRY,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:20-cr-00259-D-1)

Argued:  October 25, 2023                           Decided:  May 16, 2024

Before KING and GREGORY, Circuit Judges, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Paul K. Sun, Jr., ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.   Tyler Anne Lee, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,

2

for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

At a bench trial, the district court found Mr. Victor Berry guilty of violating 18 U.S.C. § 922(g)(1) for knowingly possessing a firearm despite having been previously convicted of a crime punishable by imprisonment for a term exceeding one year. The uncontradicted evidence showed that Mr. Berry had earlier in March 2018 been convicted of felony robbery in the Superior Court of the District of Columbia. For that offense, he was sentenced to 36 months imprisonment followed by three years of supervised release. The imposition of that sentence was suspended pursuant to D.C.'s Youth Rehabilitation Act.

Mr. Berry asserts that his robbery conviction was not a legally sufficient predicate offense for a violation of the firearm possession statute and that he did not have the requisite knowledge that he belonged to a category of persons barred from possessing a firearm. He further argues that the district court erred in denying his pretrial motions. He asserts that the September 2019 traffic stop and the search of his car were unconstitutional and that the gun discovered during the search of his car should have been suppressed. He also argues that the district court erred in its calculation of the United States Sentencing Guidelines applicable to his case when it failed to award him a two-level reduction in offense level for acceptance of responsibility. Finding no reversible error, we affirm.

I.

Around 3:00 a.m. on September 20, 2019, Officer Matthew Wescoe of the Raleigh Police Department observed a car driven by Mr. Berry. The car was a sedan with a 30-day

3

registration tag taped to its "curved back window." J.A. 52.* Officer Wescoe could not read

the temporary tag because it was placed "at an incline towards the front of the vehicle" and

was "essentially laying down." J.A. 43–44. There were no other license plates on the car.

Officer Wescoe followed Mr. Berry's car for ten to fifteen seconds, and then he initiated a

traffic stop for the registration violation.

After he made the stop, Officer Wescoe got out of his car and approached Mr.

Berry's car. He then spoke to Mr. Berry, who stated that he was on probation for robbery.

Officer Wescoe smelled baby powder and asked Mr. Berry if he was trying to cover the

smell of marijuana. Mr. Berry admitted that he "might have a little blunt" and handed over

a small amount of marijuana. J.A. 19. Officer Wescoe then escorted Mr. Berry out of the

car and conducted a search of the car. During the search, he "saw the grip of a pistol

concealed underneath the radio." *See* J.A. 194. Officer Wescoe then recovered the

Springfield XD-S9 pistol with a defaced serial number.

A database search during the traffic stop confirmed that Mr. Berry was on probation

for an out-of-state felony. During a brief conversation, Officer Wescoe learned from Mr.

Berry that he had a prior "felony conviction for robbery . . . out of DC" and that "he had

done two years of prison time for that charge." *See* J.A. 197. For that robbery conviction,

Mr. Berry had been sentenced under D.C.'s Youth Rehabilitation Act ("YRA"). The YRA

allows the court to "suspend the imposition or execution of sentence and place the youth

---

* Citations herein to "J.A." refer to the contents of the Joint Appendix filed by the parties in this appeal.

offender on probation." D.C. Code § 24-903(a)(1)(b). The YRA also permits the court to unconditionally discharge a youth offender who has been placed on probation—setting aside the conviction. D.C. Code § 24-906(e). Pursuant to the YRA, Mr. Berry was sentenced to 36 months incarceration followed by three years of supervised release, with the execution of the sentence suspended. *See* J.A. 100. The court also imposed 18 months of supervised probation. *Id.*

## II.

In June 2020, a grand jury indicted Mr. Berry for knowingly possessing a firearm despite knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Mr. Berry's predicate disabling offense, which prevented him from legally possessing a firearm, was the 2018 D.C. robbery conviction. In July 2021, before trial on Mr. Berry's federal § 922(g)(1) offense, the D.C. Superior Court set aside his robbery conviction pursuant to the YRA's discharge provision.

On September 17, 2021, Mr. Berry filed a pretrial motion to dismiss the indictment, arguing that his set-aside robbery conviction could not be used as a predicate felony conviction to support a § 922(g)(1) charge. The district court denied his motion to dismiss because the subsequent discharge of his predicate felony was irrelevant to his culpability as the D.C. conviction was still disabling at the time of his firearm possession.

Mr. Berry also moved to suppress the evidence found in the car during the traffic stop, arguing that Officer Wescoe lacked reasonable suspicion to stop his vehicle because

5

the placement of the temporary tag complied with North Carolina law. The Government responded that there was reasonable suspicion for a violation of N.C. Gen. Stat. § 20-63(g), which requires a license plate to be displayed in a "horizontal upright position." The district court found that Officer Wescoe had both reasonable suspicion and probable cause to initiate the traffic stop because "as a factual matter . . . [Mr. Berry] did not display a number plate in a horizontal upright position." J.A. 69.

At the bench trial, the Government introduced a certified copy of the judgment from Mr. Berry's D.C. robbery case. Based on this evidence, as well as Officer Wescoe's testimony regarding the traffic stop, the district court found Mr. Berry guilty of violating 18 U.S.C. § 922(g)(1). Mr. Berry did not testify, cross-examine any of the witnesses, or otherwise offer evidence in his defense.

The district court indicated that Mr. Berry could still receive a two-level reduction in his sentencing guideline calculation for acceptance of responsibility. Prior to sentencing, however, the Probation Office prepared a presentence investigation report ("PSR"), which showed that Mr. Berry had tested positive for drugs at four points during the pendency of his case: twice for marijuana in 2021, once for marijuana in March 2022, and once for fentanyl in April 2022. Probation calculated his total offense level as 18 with a criminal history category of I, which resulted in a guideline range of 27 to 33 months imprisonment. The district court found that the failed drug tests evidenced that Mr. Berry did not clearly demonstrate acceptance of responsibility and declined to apply the two-level reduction.

Mr. Berry then filed this appeal, asking this Court to reverse the judgment of the district court and remand with instructions to dismiss the indictment. Alternatively, Mr.

Berry requests that this Court vacate his sentence and remand for resentencing. For the following reasons, we affirm the decision of the district court.

## III.

### A.

Mr. Berry attacks his underlying conviction as a valid predicate offense in two ways. First, he argues that he was not within a category of persons barred from possessing a firearm because his felony robbery conviction was set aside in July 2021 and was no longer disabling, and, therefore, the district court erred in denying his motion to dismiss the indictment. Second, he asserts that the district court erred in preventing him from testifying that he was unaware that he belonged to a category of persons barred from possessing a firearm. Thus, the principal issue before the court is whether Mr. Berry, at the time he possessed the firearm, was in a category of persons barred from possessing a firearm.

We review de novo a district court's denial of a motion to dismiss the indictment when the district court's ruling depends on a question of law. *United States v. Bridges*, 741 F.3d 464, 467 (4th Cir. 2014). Further, we review the refusal to admit defense evidence for abuse of discretion. *United States v. Malloy*, 568 F.3d 166, 177 (4th Cir. 2009).

Under 18 U.S.C. § 922(g)(1), it is unlawful for an individual to possess a firearm if he has been convicted of "a crime punishable by imprisonment for a term exceeding one year," as defined by 18 U.S.C. § 921(a)(20). The government must prove the defendant's "status," i.e., that one is included in a category of persons that are prohibited from possessing a firearm. *See Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019). For

7

this element, the government must prove that the defendant both (1) belonged to a category of persons barred from possessing a firearm and (2) had knowledge of his inclusion in that category. *See id.* at 2197–98.

First, Mr. Berry's attack on his inclusion in a category of persons barred from possessing a firearm fails. Mr. Berry argues that the plain text of § 921(a)(20) does not specify timing limitations, and—even though his predicate conviction was not set aside until nearly two years after the instant offense conduct—his § 922(g)(1) charge should have been dismissed because his D.C. robbery conviction was no longer disabling under the statute.

Our decision in *United States v. Kahoe*, 134 F.3d 1230 (4th Cir. 1998), forecloses Mr. Berry's interpretation of the statute. In *Kahoe*, we found it to be irrelevant that a defendant's conviction was vacated *after* he unlawfully possessed a firearm because the conviction was still disabling at the time of the § 922(g) offense conduct. *Id.* at 1235. We held that while "[t]he plain language of § 921(a)(20) means that a conviction that has been set aside can no longer be disabling[,] [t]he language does not provide that such a conviction was not disabling between the time it was obtained and the time it was set aside." *Id.* at 1233 (footnote omitted). This case falls squarely within *Kahoe*. The district court did not err in denying Mr. Berry's motion to dismiss the indictment.

Second, Mr. Berry's argument that he lacked knowledge of his status also fails. The category of persons barred from possessing a firearm is defined by the statute in simple terms; it includes a person "who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). To be subject to

8

criminal liability under § 922(g)(1), one must be aware of the potential statutory penalty for the predicate crime—not the actual sentence imposed. The statute does not require that the individual must have received such a sentence. It includes those who receive probationary sentences or sentences that are later abated.

Knowledge of one's categorical status is not to be confused with labeling or naming. Shorthand labels of a category do not change the definitional requirement for inclusion therein. One's criminal liability at the time of the commission of the § 922(g) offense is determined by their then knowledge of the facts *statutorily* required for membership in the category. The statute simply defines the category of persons as those convicted of "a crime punishable by imprisonment for a term exceeding one year." The statute does not require any labeling of the offense as serious, infamous, a felony, or otherwise. It is not about how the offense is labeled, but rather the individual's knowledge of the specific punishment potential. This understanding—that the prior offense could have resulted in imprisonment exceeding one year—is what legally disqualifies one from firearm possession. And proving that the defendant knew they had been convicted of such a crime "can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).

The district court clearly understood that the Government had to prove beyond a reasonable doubt Mr. Berry's knowledge of his categorical membership at the time of the § 922(g)(1) offense and not his speculation or anticipation of a potential future change in status. Mr. Berry was free to testify on the relevant issue as to whether he knew that his D.C. conviction was punishable by a term of imprisonment exceeding one year and that he

9

was unaware of that punishment because his plea agreement was under the YRA. However, any testimony that he did not think he was a *felon* or that he knew his sentence could *later* be set aside would have been irrelevant, and the district court did not err in preventing such testimony.

Further, the Government demonstrated that Mr. Berry knew he had been convicted of a predicate disabling offense by introducing the certified copy of the judgment in his D.C. felony robbery case and through Officer Wescoe's testimony about his conversation with Mr. Berry during the September 2019 traffic stop. Officer Wescoe testified that during that conversation, Mr. Berry disclosed that he had been convicted of a felony in D.C. and that he had served two years of prison time for that felony. This evidence is sufficient under *Rehaif* for a reasonable fact-finder to conclude beyond a reasonable doubt that Mr. Berry knew he had been convicted of an offense punishable by a term of imprisonment exceeding one year.

B.

Mr. Berry next challenges the district court's denial of his pretrial motion to suppress the seized gun. Mr. Berry argues that Officer Wescoe did not have reasonable suspicion to stop his vehicle because the temporary tag on the rear window complied with North Carolina law. However, the district court did not err in denying the motion to suppress because the traffic stop was properly supported by reasonable suspicion that a traffic offense had been committed.

10

This Court "reviews the district court's legal conclusions regarding a motion to suppress *de novo*, but factual determinations are reviewed under a clearly erroneous standard," construing the evidence in the light most favorable to the Government. *United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir. 1997); *see also United States v. Perez*, 30 F.4th 369, 374 (4th Cir. 2022).

Officers conducting a traffic stop need only reasonable suspicion, or "a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heinen v. North Carolina*, 574 U.S. 54, 60 (2014) (internal quotation marks omitted). Reasonableness is based on "specific and articulable facts[] of unlawful conduct." *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). In looking at the totality of the circumstances, this Court decides, "from the standpoint of an objectively reasonable police officer," whether the relevant facts known gave rise to reasonable suspicion or probable cause. *United States v. Singh*, 363 F.3d 347, 354 (4th Cir. 2004) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). It is reasonable for officers to stop a vehicle "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also Hassan El*, 5 F.3d at 730 ("When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.") (quoting *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir. 1990)).

Officer Wescoe had both reasonable suspicion and probable cause to stop Mr. Berry's car based on violations of state traffic laws. North Carolina law provides that "any operator of a motor vehicle . . . who shall display a number plate in other than a horizontal

11

upright position, shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 20-63(g) ("Alteration, Disguise, or Concealment of Numbers"). The testimony and photographic evidence confirm the placement and angle of the temporary tag that led Officer Wescoe to make the traffic stop, and he observed these violations before making the stop. As such, the district court did not err in finding reasonable suspicion because its factual determination that the tag was not upright was not clearly erroneous. Alternatively, Officer Wescoe properly initiated the traffic stop based on a reasonable suspicion that Mr. Berry violated N.C. Gen. Stat. § 20-63(d) ("[A] registration plate shall be attached to the rear of the motor vehicle.") and N.C. Gen. Stat. § 20-129(d) (requiring plates to "be illuminated by a white light").

## C.

Finally, Mr. Berry seeks alternative relief and asks this Court to vacate his sentence and remand for resentencing. He alleges that the district court erred in declining to award him a two-level reduction in his guideline level pursuant to § 3E1.1(a) of the United States Sentencing Guidelines. Mr. Berry argues that the district court committed procedural error and should have awarded him an acceptance of responsibility reduction even though he had four positive drug tests during the pendency of his criminal case because those positive drug tests were unrelated to his offense of conviction.

This Court reviews a district court's sentence for abuse of discretion and determines whether the Sentencing Guidelines calculation was proper by reviewing the court's "factual findings for clear error and its legal conclusions de novo." *United States v. Dodd*, 770 F.3d

12

306, 309 (4th Cir. 2014) (quoting *United States v. Bartko*, 728 F.3d 327, 345 (4th Cir. 2013)). "The district court's decision not to reduce the offense level [on acceptance of responsibility grounds] will not be disturbed unless clearly erroneous." *United States v. Kidd*, 12 F.3d 30, 34 (4th Cir. 1993) (alteration in original) (quoting *United States v. Curtis*, 934 F.2d 553, 557 (4th Cir. 1991)). A defendant bears the burden of establishing that he is entitled to a reduction in total offense level for acceptance of responsibility. *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007).

Section 3E1.1(a) of the Sentencing Guidelines states that a defendant who "clearly demonstrates acceptance of responsibility for his offense" is eligible for a two-level reduction in his total offense level. The Application Note to this section provides a non-exhaustive list of appropriate considerations for the sentencing court to consider when determining whether a defendant qualifies for an acceptance of responsibility reduction. These "appropriate considerations include, but are not limited to, . . . *voluntary termination or withdrawal from criminal conduct or associations*." U.S.S.G. § 3E1.1(a), cmt. n.1 (emphasis added).

Mr. Berry argues that Application Note (1)(B) to § 3E1.1(a) does not enable courts to consider unrelated drug offenses. We disagree. Contrary to Mr. Berry's argument, the text of § 3E1.1(a) does not preclude district courts from considering criminal conduct that is unrelated to the offense of conviction. Continuing criminal activity is inconsistent with accepting responsibility. We expect that an accused criminal defendant who repeatedly violates his bond conditions will be denied acceptance of responsibility. This Court has upheld denials of acceptance of responsibility when "the defendant continues criminal

13

activity after apprehension, indictment, or guilty plea." *United States v. Atkinson*, 799 F. App'x 198, 200 (4th Cir. 2020) (citation omitted). We adopt the approach of the Ninth, Third, and First Circuits and hold that district courts may consider unrelated post-indictment criminal conduct when determining whether to apply the reduction for acceptance of responsibility. *See United States v. Mara*, 523 F.3d 1036, 1038 (9th Cir. 2008); *United States v. Ceccarani*, 98 F.3d 126, 130 (3d Cir. 1996); *United States v. Jordan*, 549 F.3d 57, 61 (1st Cir. 2008). Therefore, the district court permissibly considered Mr. Berry's post-indictment criminal conduct in determining his eligibility for acceptance of responsibility.

Mr. Berry's continued drug use throughout the criminal process suggests he did not clearly accept responsibility for his conduct. Thus, the district court did not err in declining to grant Mr. Berry a two-level reduction in offense level for acceptance of responsibility.

IV.

For the foregoing reasons, we affirm the decision of the district court.

*AFFIRMED*

14